No. 25-108

[FED. CL. No. 23-cv-1876C]

IN THE UNITED STATES COURT OF APPEALS

FOR THE FEDERAL CIRCUIT

112 GENESEE STREET, LLC, *et al*,

Plaintiffs-Respondents,

v.

THE UNITED STATES,

Defendant-Petitioner.

REPLY IN SUPPORT OF PETITION FOR PERMISSION TO APPEAL AN INTERLOCUTORY ORDER OF THE COURT OF FEDERAL CLAIMS DATED JULY 24, 2024, IN CASE NO. 23-CV-1876 PURSUANT TO 28 U.S.C. § 1292(d)

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

WILLIAM J. GRIMALDI
Assistant Director

REBECCA S. KRUSER
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 305-2035
Email: rebecca.s.kruser@usdoj.gov

November 27, 2024                    Attorneys for Defendant-Petitioner

## TABLE OF CONTENTS

**PAGE**

ARGUMENT ..................................................................................................................1

I.   The Questions Presented are Controlling Questions of Law as to
     Which There is Substantial Ground For Difference of Opinion ..........................1

II.  Immediate Appeal Will Materially Advance The Ultimate Termination Of
     This Case ............................................................................................................ 10

CONCLUSION ............................................................................................................ 11

# TABLE OF AUTHORITIES

**CASES** **PAGE(S)**

*Eastport S. S. Corp. v. United States*,
   372 F.2d 1002 (Ct. Cl. 1967) ................................................................................. 3

*Lummi Tribe Of The Lummi Reservation, Washington v. United States,*
   870 F.3d 1313 (Fed. Cir. 2017) .............................................................................. 2

*Me. Cmty. Health Options v. United States,*
   590 U.S. 296 (2020) ....................................................................................... passim

*Orgain, Inc. v. N. Innovation Holding Corp.*,
   No. 8:18-cv-01253, 2021 WL 6103528 (C.D. Cal. Sept. 29, 2021) ...................... 5

*Samish Indian Nation v. United States,*
   657 F.3d 1330 (Fed. Cir. 2011) *rehrg. & rehrg. en banc denied, vacated as moot*,
   568 U.S. 936 (2012) ......................................................................................... 5, 10

*W6 Rest. Grp., Ltd. v. Guzman*,
   No. 1:21-CV-2361, 2024 WL 1973132 (N.D. Ohio May 3, 2024) ........................ 6

**STATUTES**

28 U.S.C. § 1292(d)(2) ................................................................................... 1, 10, 11

IN THE UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT

| | |
|---|---|
| 112 GENESEE STREET, LLC, *et al.*, | ) |
| Plaintiffs-Respondents, | ) |
| v. | ) No. 25-108 |
| THE UNITED STATES, | ) |
| Defendant-Petitioner. | ) |

**REPLY IN SUPPORT OF PETITION FOR PERMISSION TO APPEAL**

Pursuant to the Court's Order of November 6, 2024 (ECF No. 3), the United States respectfully submits this reply in support of its petition.

**ARGUMENT**

**I.   The Questions Presented are Controlling Questions of Law as to Which There is Substantial Ground For Difference of Opinion**

The first factor for determining whether an interlocutory order is ripe for appeal is whether it involves a controlling question of law. *See* 28 U.S.C. § 1292(d)(2). In their response, plaintiffs do not discuss this issue. Plaintiffs thus have conceded this element of the statutory standard.

Regarding the next element, plaintiffs fail to refute our showing that there are several reasons why the trial court's decision is erroneous or, at a minimum, there is a substantial ground for difference of opinion. First, the trial court's decision conflicts with binding precedent regarding grant programs. The Supreme Court decision in

1

*Maine Community Health* and this Court's decisions in *Lummi* and *National Center for Manufacturing Sciences* explain that claims asserting that an agency erroneously interpreted a statute or regulation governing the disbursement or calculation of grant amounts, causing the plaintiff not to receive funding to which it believes it is entitled, are not properly heard under the Tucker Act. Plaintiffs' response does not engage with this authority. Plaintiffs merely argue that these cases are distinguishable, based on their own characterization of their complaint as a basic, backwards-looking request for money damages. *See* Pls. Resp. at 1-2, 9-10.

Plaintiffs' attempt to distinguish these cases, however, is directly refuted by this Court's decision on interlocutory appeal in *Lummi*. In *Lummi*, this Court reversed the trial court's determination that the Native American Housing Assistance and Self-Determination Act of 1996 (NAHASDA) was money-mandating. 870 F.3d 1313, 1315 (Fed. Cir. 2017). The relevant sections of NAHASDA required the agency to make grants for affordable housing to Indian tribes based on a specific regulatory formula. *Id.* The agency determined that it had made overpayments and deducted these amounts from subsequent grant allocations. *Id.* The plaintiff tribe claimed that the agency misapplied the NAHASDA formula when it calculated the overpayment and thus improperly deprived them of grant funds. *Id.* at 1316. This Court reversed the trial court and held that under NAHASDA, plaintiffs "are not entitled to an actual payment of money damages, in the strictest terms; their only alleged harm is having been allocated too little in grant funding." *See id.*

2

Plaintiffs pursue the same kind of theory here. Plaintiffs themselves explain that they seek money damages for "harm" caused by the Small Business Administration's (SBA) failure to follow the "statutory command to award grants in the order applications were received." Pls. Resp. at 3-4. Plaintiffs pursue a tort-like theory that they should receive "compensation" for the "monetary value" of "injuries" caused by SBA's statutory violations. *See id.* at 17, 19. At base, plaintiffs cannot point to any direct statutory obligation to pay them Restaurant Revitalization Fund (RRF) grants. Instead, plaintiffs make an indirect claim that they were harmed by SBA's incorrect statutory interpretation that in turn caused SBA to misallocate the money to other applicants who may have applied later in time.

Indeed, plaintiffs attribute the fact that they did not receive RRF grants to SBA's alleged unlawful, arbitrary, capricious, and negligent acts or omissions. The trial court brushed aside this problem as merely inartful pleading. Appx15. However, this Court long ago rejected the idea that the United States is "liable under the Tucker Act for such a commercial injury resulting from a failure or wrong done in the course of the regulatory process." *Eastport S. S. Corp. v. United States*, 372 F.2d 1002, 1009 (Ct. Cl. 1967). The trial court's decision is in conflict with this binding precedent.

Plaintiffs also incorrectly contend that there can be no substantial ground for difference of opinion because section 9009c is unquestionably money-mandating. Pls. Resp. at 1. Plaintiffs suggest that *Maine Community Health* has resolved all of the pertinent legal questions here against the Government. *Id.* at 6-9. However, plaintiffs

3

ignore that the statutory language here is dissimilar to that at issue in *Maine Community Health*. *Maine Community Health* does not support the idea that the word "shall" somewhere near the word "award," "grant," and/or "pay," is all that matters and that the rest of the statutory provision or context should be ignored. *See id.* at 8-9.

Notably, in *Maine Community Health*, the statute stated that the Secretary of Health and Human Services "shall pay" insurers for losses exceeding the statutory threshold and the subject of this language was payment to an identifiable group, *i.e.*, insurers with unprofitable plans. *See Me. Cmty. Health Options v. United States*, 590 U.S. 296, 302 (2020). By contrast, in section 9009c, Congress did not state that SBA shall award a grant to any or all eligible entities or to eligible entities who applied at a certain date or time or met certain criteria. Section 9009c does not define any group of applicants entitled to recover under the statute. *See* Pls. Resp. at 11. Plaintiffs' argument, like the trial court's opinion, instead tries to create a damages remedy based on an agency's asserted non-compliance with a non-monetary, administrative instruction.

To the extent that plaintiffs are asserting that the statute requires payment to all eligible entities in general, this argument not only misconstrues the statute but is contrary to the trial court's decision. *See id.* The trial court specifically stated that, "[i]mportantly, section 9009c is not an unlimited money-mandate requiring the payment of grants to all eligible entities" and it "does not provide a general entitlement and is not a money-mandating grant to all eligible entities[.]" Appx19.

4

The trial court also acknowledged that section 9009c does not "literally" command payment to all eligible entities. Appx22. The trial court thus notably did not find this case to be directly resolved by *Maine Community Health*.

The second substantial ground for difference of opinion discussed in our petition is that this case presents an issue of first impression regarding the import of this Court's holding addressing discretionary payment schemes. In its opinion, the trial court considered the statutory language to be sufficiently non-discretionary as to mandate payment. However, the court also discussed the Federal Circuit's decisions in *Samish Indian Nation*, *Perri*, and *Doe*, which set forth when an apparently discretionary statute can be money-mandating. Appx17-23. However, the Government is unaware of any decision of this Court that has applied these cases to find an "individual right" to receive money from the Government based on a claimed failure of an agency in administering a program. *See* Appx19, Appx22.

Plaintiffs' response to this argument is that an "alternative holding" cannot support a request for interlocutory appeal. Pls. Resp. at 13. Plaintiffs can only muster a non-binding, unreported case from a district court as support. *See id.* (citing *Orgain, Inc. v. N. Innovation Holding Corp.*, No. 8:18-cv-01253, 2021 WL 6103528 (C.D. Cal. Sept. 29, 2021)). Regardless of the persuasive strength of *Orgain*, it is inapposite. Here, the trial court's reasoning on discretionary payment schemes was not a separate, alternate holding, but instead an alternate basis for its conclusion that section 9009c is

5

money-mandating. The trial court's application of *Samish Indian Nation*, *Perri*, and *Doe* relates to this same controlling question of law for which we seek certification.

The third substantial ground for difference of opinion discussed in our petition is that the trial court's opinion is in tension with the fact that other cases challenging the administration of the RRF have been filed in the United States district courts. Notably, in the *W6 Restaurant Group* case, the plaintiffs asserted an APA claim based on the same theory that SBA "did not process applications for RRF grants in the order in which they were received[.]" *W6 Rest. Grp., Ltd. v. Guzman*, No. 1:21-CV-2361, 2024 WL 1973132, at *2 (N.D. Ohio May 3, 2024), *appeal docketed*, No. 24-3483 (6th Cir. June 5, 2024). Contrary to plaintiffs' assertion, our argument does not ignore that the district court plaintiffs have brought APA claims requesting equitable relief, whereas here plaintiffs have carefully styled their complaint as one for money damages. Pls. Resp. at 18-19. Rather, this just highlights the core problem with plaintiffs' claim here – the trial court should not have exercised jurisdiction over a disguised APA claim just because plaintiffs' preferred outcome is to receive money. *See* Appx12-13, Appx24-26. It is highly relevant that district courts have accepted APA challenges to SBA's method of paying out the RRF grants, despite the ultimate redressability problems.

Plaintiffs do not address our point that this Court should have the opportunity to address whether this statute indeed presents an area of concurrent jurisdiction with the district courts. *See* Appx14. The cases cited by the trial court are inapposite.

Furthermore, plaintiffs repeat the trial court's erroneous inference that because the district courts uniformly dismissed these APA suits due to lack of standing or mootness, the trial court possesses Tucker Act jurisdiction. Pls. Resp. at 20; Appx11. This holding would improperly make the trial court a backup forum for litigants to repackage and reassert non-redressable or defective APA claims.

The fourth instance of a substantial ground for difference of opinion discussed in our petition is that the trial court's ruling is in tension with this Court's decision in *Katz v. Cisneros*, which is based on the Supreme Court's decision in *Bowen*. We explained that the trial court failed to properly apply these cases, based on its erroneous view that the scope of *Bowen* was somehow limited in *Maine Community Health* and this Court's decisions in *Suburban Mortgage Associates* and *Consolidated Edison*. Appx12. In their response, plaintiffs do not address our argument.

Instead, plaintiffs argue that *Bowen* and *Katz* are inapplicable and once again rely heavily on their characterization of their claims as only seeking backwards-looking money damages rather than any kind of prospective relief. As evidence of retrospectiveness, plaintiffs point to how the statute calculated the amount of an RRF grant as an applicant's decline in gross revenue between 2020 and 2019, the time period that predated the statute, and that the RRF program has concluded. Pls. Resp. at 3, 9-10.

By focusing on the RRF program itself, plaintiffs do not perform the correct inquiry. Regardless of how the actual grants were calculated when the RRF program

7

was operating, plaintiffs do not claim in this suit that the statute directly required the Government to pay them a sum of money that is currently unpaid and is due and owing, as in *Maine Community Health*. Plaintiffs seek to create a new relationship with SBA prospectively, and outside of the RRF program's limitations, particularly the requirement to use funds during the covered period, by obtaining a decision that they should have received grants. There is thus a substantial ground for difference of opinion because the trial court was required to address the parties' competing interpretations of *Maine Community Health* and *Bowen*.

The fifth instance of a substantial ground for difference of opinion discussed in our petition goes to whether plaintiffs state a claim upon which relief can be granted. Contrary to plaintiffs' argument, if this appeal is accepted, we intend to challenge the trial court's holding. *See* Pls. Resp. at 21. In particular, we intend to argue that the trial court erroneously interpreted the phrase "in addition to amounts otherwise available" to be open ended even though Congress has never made any additional amounts available. *See* Appx29-32.

That there is substantial ground for difference of opinion, at a minimum, on this issue is demonstrated by the trial court's lengthy analysis and examination of *Maine Community Health*, *Star-Glo*, *Greenlee County*, and *Prairie County* and determination that no existing precedent involved a statute with wording like section 9009c. Appx29-32. The Court applied "the factors deemed important by the Federal Circuit in its precedents to the apparently unprecedented language of the RRF statute" and

8

concluded that section 9009c did not impose a cap on the Government's liability. Appx31.

Plaintiffs argue that the distinctive statutory language is irrelevant because the trial court held that their claims would survive even if the Government's liability were capped. Pls. Resp. at 21. But the trial court likewise recognized that its analysis of the existence of a cap and the effect of any cap was not resolved by current precedent. The trial court specifically explained that existing caselaw does not extend to the scenario of plaintiffs seeking damages because they would have received grants "had SBA not misinterpreted the statute and made award to the wrong applicants . . . ." Appx32. The trial court determined that in the "absence of caselaw holding that a plaintiff cannot state a claim under these circumstances," it would effectuate Congress's intent that plaintiffs receive money for their pandemic-related losses. Appx33. Therefore, as the trial court itself confirmed, its holding even as to the significance of the cap was not dictated by settled law.

Plaintiffs' argument that the trial court's decision is "compelled" by *Maine Community Health* is erroneous. Pls. Resp. at 22-23. Unlike in *Maine Community Health*, section 9009c contains the express limiting language of including a specific appropriated amount -- $28.6 billion. In *Maine Community Health*, the Supreme Court noted that "Congress could have expressly limited an obligation to available appropriations or *specific dollar amounts*." 590 U.S. at 313 (emphasis added). In a footnote, the Supreme Court then cited numerous examples of statutory provisions

9

that contained the "limiting language" of the phrase "subject to the availability of appropriations" or *listed an appropriated amount*, such as "[t]here is authorized to be appropriated to carry out this section, $10,000,000[.]" *Id.* at 313 n.7. Thus, directly contrary to plaintiffs' argument, Congress' inclusion of a specific dollar amount is equivalent to using the phrase "subject to the availability of appropriations."

Finally, *Samish Indian Nation v. United States*, (*Samish V*) does not demonstrate the lack of a substantial ground for difference of opinion. *See* Pls. Resp. at 24. In *Samish V*, this Court found that the statute did not have limiting language that capped the Government's liability for damages and distinguished *Star-Glo* and *Greenlee County*. 657 F.3d 1330, 1339-41 (Fed. Cir. 2011), *rehrg. & rehrg. en banc denied, vacated as moot*, 568 U.S. 936 (2012). However, the language of the statute in *Samish V* is not at all analogous to the language in section 9009c and the trial court did not rely upon it in reaching its decision. *See* Appx29-33.

## II.    Immediate Appeal Will Materially Advance the Ultimate Termination of This Case

In our petition, we explained that if the Court accepts the appeal and reverses on either controlling legal question, the trial court and the parties will avoid unnecessary delay, expense, and piecemeal litigation. Notably, plaintiffs do not address our argument. Therefore, plaintiffs have also conceded this factor.

Instead, plaintiffs suggest, using a recent example, that this Court takes too long to advance cases on its docket and therefore they should not be made to undergo

10

an interlocutory appeal. Pls. Resp. at 25. However, section 1292(d)(2) does not include as a factor the time required for an interlocutory appeal or the asserted prejudice caused by such an appeal. *See* 28 U.S.C. § 1292(d)(2). An interlocutory appeal has significant potential to materially advance the ultimate resolution of this matter. Moreover, the trial court has already addressed plaintiffs' concerns by only staying the case through the completion of briefing at this Court. *See* Appx41.

## CONCLUSION

For these reasons and those in the petition, we respectfully request that the Court grant our petition for permission to appeal an interlocutory order under 28 U.S.C. § 1292(d)(2).

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

/s/ William J. Grimaldi
WILLIAM J. GRIMALDI
Assistant Director

/s/ Rebecca S. Kruser
Rebecca S. Kruser
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044

11

|  |  |
|---|---|
|  | Telephone: (202) 305-2035 |
|  | Email: rebecca.s.kruser@usdoj.gov |
| November 27, 2024 | Attorneys for Defendant-Petitioner |

## CERTIFICATE OF COMPLIANCE

I hereby certify that this reply contains 2,588 words, excluding the parts of the motion exempted by Federal Rule of Appellate Procedure 32(f). I further certify that this reply complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 27(d)(1)(E), 32(a)(5), and 32(a)(6) because it has been prepared using Microsoft Word 2013 in a proportionally spaced typeface, 14-point Garamond font.

/s/ Rebecca S. Kruser
Rebecca S. Kruser